No. 42,469

VERNON D. CAYLOR, *Appellee*, v. ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a corporation, and WILLIAM E. GENTRY, *Appellants*.

(374 P. 2d 53)

Opinion on rehearing filed August 14, 1962.

W. E. *Treadway*, of Topeka, argued the cause, C. J. *Putt*, J. B. *Reeves* and *William A. Walton*, all of Topeka, were with him on the briefs for the appellants.

*John A. Bausch*, of Topeka, argued the cause, L. M. *Ascough*, E. *Edward Johnson* and *Wayne T. Stratton*, all of Topeka, were with him on the briefs for the appellee.

*Harry W. Colmery, James E. Smith, Robert E. Russell, O. R. Stites, Jr.,* and *Lawrence D. Munns,* all of Topeka, *John F. Eberhardt, C. H. Morris, John C. Frank, Henry V. Gott, Richard C. Hite, H. E. Jones, Donald R. Newkirk, William Tinker* and *Lawrence Weigand,* all of Wichita, *Charles S. Schnider* and *Marion C. Miller,* both of Kansas City, *Joe L. Henbest,* of Columbus, *Don C. Smith,* of Dodge City, *George Allred,* of Emporia, *W. Luke Chapin,* of Medicine Lodge, *Arthur C. Hodgson,* of Lyons, *Tom Crosson,* of Independence, *Kirke W. Dale,* of Arkansas City, *H. G. Engleman,* of Salina, and *D. B. Lang,* of Scott City, *Evart Mills,* of McPherson, *D. C. Martindell, W. D. P. Carey, J. Richards Hunter, Harry H. Dunn, Edwin B. Brabets, R. C. Martindell, W. B. Swearer, E. F. Cabbage* and *John W. Feist,* all of Hutchinson, *H. Lee Turner* and *J. Eugene Balloun,* both of Great Bend, filed briefs *amici curiae.*

The opinion of the court was delivered by

Schroeder, J.: This case involves trial errors in a damage action for personal injuries sustained by the plaintiff in an automobile accident.

The questions presented are (1) whether the trial court erred in its failure to declare a mistrial after the plaintiff (appellee) in his own testimony injected the subject of appellants' insurance, and in failing to admonish the jury by instruction or otherwise to disregard such testimony, and (2) whether the trial court erred in permitting the appellee's counsel, in closing argument, to display a chart itemizing damages for future pain and suffering, and permanent disability on a mathematical formula basis.

The appeal was first heard in December, 1961, and on January 20, 1962, our opinion affirming the judgment of the lower court was filed. (*Caylor v. Atchison, T. & S. F. Rly. Co.,* 189 Kan. 210, 368 P. 2d 281.)

A rehearing was granted and the case was reargued at the June, 1962, session.

Upon further consideration of the case, the court is convinced that the former decision is incorrect as to the mathematical formula argument (question No. 2 above). As to that portion of the opinion filed it should be and is hereby withdrawn, vacated and set aside. The decision of the court on the insurance feature (question No. 1 above) and the opinion thereon is in all respects affirmed.

Reference is made to the former opinion for the facts and general discussion on the use of the "per diem" argument to the jury concerning the allowance of damages for future pain and suffering and permanent disability. (189 Kan., pp. 215 to 221.) This has been referred to as the mathematical formula argument or "formula technique."

The most recent decisions from other jurisdictions on this point are also divided.

The Supreme Court of Illinois on March 23, 1962, in *Caley v. Manicke*, 24 Ill. 2d 390, 182 N. E. 2d 206, reversed the Appellate Division (*Caley v. Manicke*, 29 Ill. App. 2d 323, 173 N. E. 2d 209) holding the portions of a prepared chart reflecting a mathematical formula for pain and suffering to be improper. On the same date the Supreme Court of Illinois in *Jensen v. Elgin, Joliet and Eastern Railway Company*, 24 Ill. 2d 383, 182 N. E. 2d 211, on the authority of *Caley v. Manicke*, supra, held it to be reversible error for counsel to use a mathematical formula in his argument to the jury.

The Supreme Court of South Carolina on the 7th day of February, 1962, in *Harper v. Bolton*, 239 S. C. 541, 124 S. E. 2d 54, 59, held it reversible error to permit counsel to endorse on a blackboard his own personal opinion as to the per diem value of pain and suffering in final argument to the jury. The court adopted the reasoning in *Appliance Company v. Harrington*, [1959] 201 Va. 109, 109 S. E. 2d 126. In the opinion the South Carolina court said:

"In allowing counsel for the respondent to endorse on a blackboard his own opinion as to the per diem value of pain and suffering was to permit him to make an argument that had no foundation whatever in the evidence. Though wide latitude and freedom of counsel in arguments to the jury are and ought to be allowed, such arguments cannot be based on facts not in the record, or inferences based on or drawn from facts which are not even admissible in evidence."

On January 24, 1962, the Appellate Court of Indiana in *Evansville City Coach Lines, Inc. v. Atherton*, 133 Ind. App. 304, 179 N. E. 2d 293, held the mathematical formula argument to be proper. (See, also, *Kindler, etc. v. Edwards*, [1956] 126 Ind. App. 261, 130 N. E. 2d 491.)

The Supreme Court of Montana on February 13, 1962, in *Wyant v. Dunn*, ____ Mont. ____, 368 P. 2d 917, held a mathematical argument for damages for the loss of love, affection and companionship in a wrongful death case on a per diem basis should be left within the sound discretion of the trial court.

In *Evening Star Newspaper Company v. Gray*, [Mun. C. A., D. C.] 179 A. 2d 377, it was held that the per diem argument and the use of a chart were permissible by plaintiff's counsel.

Actually, it serves no purpose to enumerate the decisions in the various jurisdictions to determine what may be the numerical weight of authority. The scales of justice are not tipped by numerical balances.

In this jurisdiction there is no valid objection to counsel, in argu-

ment, telling the jury what, under the evidence, counsel considers a fair compensation for the injuries received. It is customary for counsel in argument to suggest a total monetary award for pain and suffering. This, however, is far less misleading than the mathematical computation of the value of pain and suffering—the display in argument of a formula—in which time units of life multiplied by price of pain per unit equals value. In mathematical terms it is a supposition multiplied by a variable which equals an unknown.

The rationale of the supporters of the per diem argument is that the jury must arrive at a total monetary value of the plaintiff's pain and suffering, and since this is inexact, counsel should be allowed to suggest the parts which make up the whole for the guidance of the jury. The procedure starts with a supposition that the plaintiff will not only live to the expectancy shown on the mortality tables, but that the pain will prevail throughout life. Then follows an assumption that the pain may be valued in dollars per unit of life, be it the year, the month, the day, hour or minute. Next, that the value of each unit is equal—that is, the pain is constant, uniform and continuous. And presto, the mathematical magic and we arrive at the whole sum. Admitting the ingenuity, it is beyond credence that accuracy can be increased or the truth served by such alchemy. This is not supported by the weight of human experience. It is a clever syllogism from an erroneous premise. No credit whatever is given for the gradual elimination of pain, the accommodation to it and the distraction from it by the events, change in circumstances and by other unconnected illnesses and injuries to which in the normal course a person is subjected. And no credit is given for the variations in pain between different individuals or the impossibility of recognizing or of isolating fixed levels or plateaus of suffering.

The purpose of this technique is blatantly to achieve "the more adequate award," a synonym to all but the naive for "the more than adequate award."

The reasoning assigned by courts which disapprove the "formula technique" in arguing damages to a jury has been summarized in the former opinion. (189 Kan., pp. 218 and 219.) It is incorporated herein by reference and adopted as sound.

Pain and suffering is recognized in this state as a material element of damages on which recovery may be based. Damages for

pain and suffering are unliquidated and indeterminate in character, and the assessment of unliquidated damages must rest in the sound discretion of the jury. In *Domann v. Pence*, 183 Kan. 135, 325 P. 2d 321, the subject was discussed in the following language:

". . . Pain and suffering have no known dimensions, mathematical or financial. There is no exact relationship between money and physical or mental injury or suffering, and the various factors involved are not capable of proof in dollars and cents. For this very practical reason the only standard for evaluation is such amount as reasonable persons estimate to be fair compensation for the injuries suffered, and the law has entrusted the administration of this criterion to the impartial conscience and judgment of jurors, who may be expected to act reasonably, intelligently and in harmony with the evidence. . . ." (p. 141.)

In view of the above quoted language we think the discussion of the "per diem" argument in *Caley v. Manicke*, supra, by the Supreme Court of Illinois is particularly illuminating. It was there said:

". . . While the question is a close one, as evidenced by the divergence of opinion on the matter, we feel that such technique transcends the bounds of proper argument.

"Those courts that have allowed counsel to use a formula and figures in argument generally do so because they feel (1) that a jury's determination of reasonable compensation for pain and suffering is arrived at by 'a blind guess' and (2) that the jury needs to be guided by some reasonable and practical consideration. We do not take such a dim view of the jury's reasoning processes.

"Pain and suffering has no commercial value to which a jury can refer in determining what monetary allowance should be given to a plaintiff for the pain and suffering he has experienced and is reasonably certain to experience in the future. This determination, like many others that a jury must make, is left to its conscience and judgment. While a jury cannot translate pain and suffering into monetary units with the precision that it would in converting feet into inches, we do not believe that its determination of reasonable compensation for pain and suffering can be characterized as a 'blind guess.' To reduce the aggregate into hours and minutes, and then multiply by the number of time units involved produces an illusion of certainty, but it is only an illusion, for there is no more precision in the one case than in the other. A determination reached by a subjective process which is easier to comprehend than to define and upon which just and wise men may not agree does not indicate that it is a 'blind guess.' The divergence of opinion among the many able jurists who have fully and thoroughly considered the very issue here presented illustrates the point.

"It begs the question to say that the jury needs to be guided by some reasonable and practical consideration. A formula by definition is a 'conventional rule or method for doing something, especially when used, applied, or repeated without thought.' (Webster's New Twentieth Century Dictionary,

2 ed. (1958).) It would appear that a formula, rather than encouraging reasonable and practical consideration, would tend to discourage such consideration.

"Furthermore, even if the presentation of a formula and figures were permitted for purposes of illustration, the contention that the court's instruction would dispel their use by the jury as evidence ignores human nature. (See *Allendorf v. Elgin, Joliet and Eastern Railway Co.*, 8 Ill. 2d 164, 173, 133 N. E. 2d 288, 79 A. L. R. 2d 241.) Nor would the fact that opposing counsel could use his own formula and figures remedy the situation because this would only emphasize the improper argument and would further mislead the jury into relying on the formulae and figures rather than the actual evidence of damages.

"Jurors are as familiar with pain and suffering and with money as are counsel. We are of the opinion that an impartial jury which has been properly informed by the evidence and the court's instructions will, by the exercise of its conscience and sound judgment, be better able to determine reasonable compensation than it would if it were subjected to expressions of counsels' partisan conscience and judgment on the matter."

Upon a premise similar to that above quoted from *Domann v. Pence,* supra, the Virginia Supreme Court in *Appliance Company v. Harrington,* supra, when confronted with the use of a mathematical formula to determine damages for pain and suffering set forth on a blackboard in argument to a jury, said:

"To permit plaintiffs' counsel to suggest and argue to the jury an amount to be allowed for pain, suffering, mental anguish and disability calculated on a daily or other fixed basis, allows him to invade the province of the jury and to get before it what does not appear in the evidence. Since an expert witness would not be permitted to testify as to the market value of pain and suffering, which differs in individuals and the degree thereof may vary from day to day, certainly there is all the more reason for counsel not to do so. The estimates of counsel may tend to instill in the minds of the jurors impressions not founded on the evidence. Verdicts should be based on deductions drawn by the jury from the evidence presented and not the mere adoption of calculations submitted by counsel.

"We are of opinion that the use by plaintiff's counsel of a mathematical formula setting forth on a blackboard the claim of pain, suffering, mental anguish, and the percentage of disability suggested by him on a per diem or other fixed basis, was speculation of counsel unsupported by evidence, amounting to his given testimony in his summation argument, and that it was improper and constituted error. . . ." (pp. 114, 115.)

In *Crum v. Ward,* 146 W. Va. 421, 122 S. E. 2d 18, the Supreme Court of West Virginia said:

"In our view, the mathematical formula argument is based wholly on speculation, or imaginary inferences, not supported by facts, in reality by supposed facts which could not be received in evidence if offered. No effort, perhaps, would succeed in pointing out the almost innumerable variables necessarily

existing or involved in such speculation. For illustration, however, it may be suggested that any attempt to place a money value on pain for any definite unit of time is impossible of any sound basis, for no two persons, it is believed, bear the same sensitivity to pain. The severity or duration of pain, though resulting from the same cause, varies as to different individuals so greatly that the most experienced and learned physician finds no method of measuring it, but, to a very large extent, must rely on representations of the patient. . . ."

In *Henne v. Balick*, 51 Del. 369, 146 A. 2d 394, the Supreme Court of Delaware said:

"It has long been the rule in this State and elsewhere that the determination of the amount of plaintiff's damage for pain and suffering shall be determined by the trier of facts based upon the evidence submitted. This is so because any specific yardstick based upon the evidence presented is entirely lacking and courts generally do not favor the determination of damages based upon speculation or fancy. It is only in comparatively recent years that the use of a mathematical formula has been permitted in any of our courts for consideration by the jury in ascertaining the amount of plaintiff's damage. . . . There is no testimony in this case—and none would have been received if offered—in support of these figures.

". . . As we view this evidence, plaintiff was permitted by means of a blackboard demonstration of plaintiff's counsel to put in the record evidence which he would not otherwise have been permitted to introduce. It seems to us that if such evidence is to be permitted, it would be equally logical to permit expert witnesses to testify before the jury as to the reasonableness of the figures submitted for pain and suffering. No one would deny that to permit such a procedure would not only be fantastic but would be casting aside entirely the rules of procedure long followed in this country and England of permitting a jury to determine the amount to which a plaintiff would be entitled as damage for pain and suffering or other unliquidated damage based solely upon the evidence submitted.

". . . We are also clearly of the opinion that in many cases at least the purpose of such use is solely to introduce and keep before the jury figures out of all proportion to those which the jury would otherwise have had in mind, with the view of securing from the jury a verdict much larger than that warranted by the evidence." (pp. 375, 376, 377.)

The point was considered by the Supreme Court of Missouri in *Faught v. Washam*, [1959], 329 S. W. 2d 588, and in rejecting the "formula technique," it said:

". . . Only within the past few years have resourceful and ingenious counsel developed the 'trial techniques' of appealing to the jury to follow a matematical formula in admeasuring damages for pain and suffering. . . .

"To us, the considerations advanced by the authorities disapproving the mathematical formula argument are more persuasive. Whatever may be the cold logic or academic theory of the matter, the ungilded reality is that such argument is calculated and designed to implant in the jurors' minds definite

figures and amounts not theretofore in the record (and which otherwise could not get into the record) and to influence the jurors to adopt those figures and amounts in evaluating pain and suffering and in admeasuring damages therefor. *If* an *argument* of this character is permissible and proper, it would be just as logical, and equally as fair, to permit 'expert *witnesses*' to evaluate pain and suffering on a per diem or per hour basis—a revolutionary innovation which, so far as we are advised, not even the most ardent zealots of the mathematical formula technique have (as yet) proposed. . . . The contention of its advocates that the mathematical formula argument is nothing more than that and is not evidence and that the fancied danger of its being mistaken for or accepted as evidence is greatly magnified and exaggerated by the timorous is a contention sound and plausible without but hollow and specious within. . . ." (pp. 602, 603, 604.)

The foregoing considerations advanced by the authorities disapproving the mathematical formula argument are, to us, persuasive.

In our opinion the use by appellee's counsel of a mathematical formula, setting forth on a blackboard the claim of future pain and suffering and permanent disability on a per diem or other fixed basis, in argument to the jury was speculation of counsel unsupported by evidence. It amounted to the giving of testimony by counsel in his summation argument. We therefore hold such argument was improper and constituted reversible error—prejudice is conclusively presumed as a matter of law and a new trial must be granted.

The facts in the instant case are a graphic example of the impact of the "per diem" argument made upon the jury. During their deliberation the jury requested that they be permitted to have and see in their jury room the chart used and referred to by counsel for the appellee in argument. It is readily apparent they viewed the chart as evidence.

The judgment of the lower court is reversed with directions to grant a new trial.

SCHROEDER, J., dissenting: I must respectfully dissent from that portion of the opinion affirming the court's decision on the insurance issue, and adhere to the views expressed in my dissent in the former opinion on this point. (*Caylor v. Atchison, T. & S. F. Rly. Co.,* 189 Kan. 210, 368 P. 2d 281.)

PARKER, C. J. (Concurring in part and dissenting in part): I concur in paragraphs 1 and 2 of the syllabus and corresponding portions of the opinion and dissent from the court's decision on the insurance phase of the appeal.

WERTZ, J. (dissenting): I am unable to agree with the majority of the court, and I will attempt to set forth my views on the question concerning which I differ.

The cataclysmic import of the majority opinion is to require of jurors fairness without thought and decision without discussion. The majority of this court has now decided that the only way to obtain a fair verdict—in personal injury cases—is to compel jurors to ponder pain and suffering in a vacuum within the jury room waiting until lightning strikes and something is hatched from nothing.

Defendants (appellants) contend it is reversible error for an attorney to use a mathematical or *per diem* approach in his argument to the jury regarding the value of pain and suffering. While this type of argument has been used in this state for many years, this appears to be the first time it has been raised as error in this court in cases involving unliquidated damages. However, the question raised is not novel in this country. The same contentions and arguments have been presented to thirty-two jurisdictions in this country within recent years. Only seven states have accepted the argument made by defendants. They are: *Stassun v. Chapin*, Appellant, 324 Pa. 125, 188 Atl. 111; *Botta v. Brunner*, 26 N. J. 82, 138 A. 2d 713; *Appliance Company v. Harrington*, 201 Va. 109, 109 S. E. 2d 126; *Crum v. Ward*, 146 W. Va. 421, 122 S. E. 2d 18; *Henne v. Balick*, 1 Storey 369, 51 Del. 369, 146 A. 2d 394; *Affett v. Milwaukee & S. T. Corp.*, 11 Wis. 2d 604, 106 N. W. 2d 274; *Caley v. Manicke*, 24 Ill. 2d 390, 182 N. E. 2d 206.

In *Stassun v. Chapin*, supra, the Pennsylvania court held that in cases where the damages are unliquidated and incapable of measurement by a mathematical standard, statements by plaintiffs' counsel as to the amount claimed or expected are not to be sanctioned. This is the basis upon which Pennsylvania denies the use of *per diem* formula argument. For many years it has been the rule in Pennsylvania that statements by plaintiffs' counsel as to the amount sued for, claimed or expected are not permissible either by the court or by counsel.

In *Botta v. Brunner*, supra, the New Jersey court adopted the Pennsylvania rule of prohibiting counsel or the court from advising the jury as to the amount of unliquidated damages prayed for or mentioning any amount to the jury. In this state we have never had such a rule of law, and to now establish one here would change the

entire rule of trial procedure and leave the bench and bar in a dilemma.

Only Pennsylvania and New Jersey have clearly adopted the *ad damnum rule*. The other five states adhering to defendants' contention have adopted only a part of the New Jersey-Pennsylvania rule. These states recognize that counsel may refer to the amount claimed as unliquidated damages but may not use the questioned formula, as to pain and suffering only. A review of the Pennsylvania and New Jersey authorities indicate that these states would not allow counsel to give to the jury any figure for pain and suffering, since the total of the amount claimed as unliquidated damages cannot be given. This would seem to be an undesirable practice, one which is entirely foreign to our jurisdiction, and not completely accepted within their own jurisdiction. In commenting on the wisdom of this rule it was stated in 12 Rutgers Law Review 522:

". . . The plaintiff sues for money. The defendant defends against an award of money. The jury is limited to expressing its findings in terms of money. Nevertheless the jury must be precluded from hearing any reference whatever to money. . . ."

The *Botta* rule requires juries to convert pain to dollars; allows judges to review the result as too much or too little; and yet tells the lawyers, who are the only representatives of their clients, that they must not discuss the matter. In *Matthews v. Nelson*, 57 N. J. Super. 515, 155 A. 2d 111 (Oct. 1959), after commenting on their *Botta* case, supra, the New Jersey court permitted a mathematical formula to be argued to the jury in a wrongful death action.

The twenty-five jurisdictions in which defendants' arguments have been presented and rejected are: *Jones v. Hogan*, 56 Wn. 2d 23, 351 P. 2d 153; *Hill v. C. & E. Constr. Co.*, 59 Wn. 2d 743, 370 P. 2d 255; *Yates v. Wenk*, 363 Mich. 311, 109 N. W. 2d 828; *Hernandez v. Baucum* (Texas Civil Appeals), 344 S. W. 2d 498; *Louisville & Nashville Railroad Co. v. Mattingly* (Kentucky), 339 S. W. 2d 155; *Evansville City Coach Lines, Inc. v. Atherton*, _____ Ind. App. _____, 179 N. E. 2d 293; *Harper v. Higgs*, 225 Md. 24, 169 A. 2d 661; *Little v. Hughes* (La.), 136 So. 2d 448; *Seffert v. Los Angeles Transit Lines*, 15 Cal. Rptr. 161, 364 P. 2d 337; *Arnold, et al. v. Ellis*, 231 Miss. 757, 97 So. 2d 744; *McLaney v. Turner*, 267 Ala. 588, 104 So. 2d 315; *King v. Railway Express Agency, Inc.* (North Dakota), 107 N. W. 2d 509; *Miller v. Loy*, 101 O. A. 405, 140 N. E. 2d 38; *Ratner v. Arrington* (Florida), 111 So. 2d 82; *Johnson*

*v. Brown*, 75 Nev. 437, 345 P. 2d 754; *Olsen v. Preferred Risk Mutual Insurance Company*, 11 Utah 2d 23, 354 P. 2d 575; *Johnson v. Charleston & W. C. Ry. Co.*, 234 S. C. 448, 108 S. E. 2d 777; *Missouri-Kansas-Texas Railroad Company v. Jones* (Okla.), 354 P. 2d 415; *Boutang v. Twin City Motor Bus Co.*, 248 Minn. 240, 80 N. W. 2d 30; *Corkery v. Greenberg*, 253 Ia. 846, 114 N. W. 2d 327; *Wyant v. Dunn*, ____ Mont. ____, 368 P. 2d 917; *Evening Star Newspaper Company v. Gray* (D. C.), 179 A. 2d 377; *Imperial Oil, Limited v. Drlik*, (Sixth Circuit) 234 F. 2d 4, cert. denied 352 U. S. 941, 77 S. Ct. 261, 1 L. Ed. 2d 236; *Bowers v. Pennsylvania Railroad Company*, 182 F. Supp. 756, affirmed (Third Circuit) 281 F. 2d 953.

Defendants' counsel base their entire case on the rule as laid down in the Pennsylvania, New Jersey, and the recent Illinois decision of *Caley v. Manicke*, supra, decided by the supreme court of Illinois on the 12th day of March, 1962. They furnish us with a copy of the Illinois case and base the theory of their argument on these cases. Attention should be invited at this point to the fact that defendants' counsel have failed to cite to this court the very recent cases of six other sister states holding to the contrary, two of which were decided since the Illinois case.

In *Corkery v. Greenberg* (Supreme Court of Iowa, Apr. 3, 1962) 253 Ia. 846, 114 N. W. 2d 327, the Iowa court, after analyzing the Pennsylvania and New Jersey opinions—the states relied on by defendents—stated:

". . . The task of the lawyer is to assist the jury in reaching a verdict. In doing this a suggestion of the manner in which the lawyer reached the amount asked without more cannot invade the province of the jury. The jury must reach their verdict by reasoning and drawing inferences. The per diem argument is nothing more *than a suggestion of a course of reasoning from the evidence of pain and disability to the award.*" [Emphasis supplied.]

In *Eastern Shore Public Service Company v. Corbett* (Court of Appeals of Maryland, January, 1962), 177 A. 2d 701, it is stated, with reference to the *per diem* formula of argument, that they did not deem it necessary to labor the question, and:

"We think the reasons for permitting such arguments, without repeating them, and the benefits to be derived therefrom outweigh the grounds suggested against their allowance and any disadvantages that might result from such arguments."

In *Evansville City Coach Lines, Inc. v. Atherton* (Jan. 1962) 179 N. E. 2d 293, the Indiana appellate court, after review of the cases, said, with reference to the mathematical formula:

"To sustain this contention appellant relies upon and quotes at great length from the decision of the Supreme Court of New Jersey in the case of. *Botta v. Brunner* (1958), 26 N. J. 82, 138 A. 2d 713, 60 A. L. R. 2d 1331. This is the minority view, and the overwhelming weight of authority upholds counsel's right to suggest to the jury in argument an amount on a per diem basis for pain and suffering and permanent injuries as was done here. *Imperial Oil, Limited v. Drlik* (6 Cir., 1956), 234 F. 2d 4; 352 U. S. 941, 77 S. Ct. 261, 1 L. Ed. 2d 236; *Haycock v. Christie* (1957), 101 U. S. App. D. C. 409, 249 F. 2d 501; *Clark v. Hudson* (1957), 265 Ala. 630, 93 So. 2d 138; *McLaney v. Turner* (1958), 267 Ala. 588, 104 So. 2d 315; *Ratner v. Arrington* (Fla., App., 1959), 111 So. 2d 82; *Aetna Oil Co. v. Metcalf* (1944), 298 Ky. 706, 183 S. W. 2d 637; *Boutang v. Twin City Motor Bus Co.* (1956), 248 Minn. 240, 80 N. W. 2d 30; *Flaherty v. Minneapolis & St. Louis Ry. Co.* (1958), 251 Minn. 345, 87 N. W. 2d 633; *Haley v. Hockey* (1950), 199 Misc. 512, 103 N. Y. S. 2d 717; *Four-County Elec. P. Ass'n v. Clardy* (1954), 221 Miss. 403, 78 So. 2d 144, 44 A. L. R. 2d 1191; *Arnold et al. v. Ellis* (1957), 231 Miss. 757, 97 So. 2d 744; *A. B. C. Storage & Moving Co. v. Herron* (Tex. Civ. App., 1940), 138 S. W. 2d 211; *J. D. Wright & Son Truck Line v. Chandler* (Tex. Civ. App., 1950), 231 S. W. 2d 786; *Continental Bus System Inc. v. Toombs* (Tex. Civ. App., 1959), 325 S. W. 2d 153, 164."

In *Wyant v. Dunn* (Feb. 1962) 368 P. 2d 917, the Montana court, after reviewing the authorities, including the New Jersey-Pennsylvania rule, stated:

"The preferable rule in this state, in view of our statute and the custom and practice thereunder, is to leave the propriety of counsel's use of such argument to the sound discretion of the trial court."

In *Little v. Hughes* (Dec. 1961) 136 So. 2d 448, the Louisiana court stated:

"We do not agree that defendant was prejudiced by the eminent trial judge's ruling that the plaintiff could argue to the jury the value of the claim of plaintiff by the use of a previously prepared cardboard chart which attempted to place value by the hour on pain and suffering. The defendant would have us adopt the minority rule expressed in the case of *Botta v. Brunner,* 26 N. J. 82, 138 A. 2d 713, 60 A. L. R. 2d 1331. However, we believe that the majority rule permits counsel to employ this type of argument." (Citing thirteen separate jurisdictions.)

In *Evening Star Newspaper Company v. Gray* (D. C., Jan. 1962), 179 A. 2d 377, the Municipal Court of Appeals of the District of Columbia, after reviewing authorities, stated:

"We think that such statements as these, and decisions such as *Botta v. Brunner* and *Simmons v. Adams,* supra, are grounded upon an appraisal of the jury process to which we cannot subscribe. We agree with the Ninth Circuit Court of Appeals that there is no reason why the jury should be influenced by the amount claimed by the plaintiff, any more than by any other claims advanced by the parties. 'Such claims are not evidence, and it is an

insult to human intelligence to say that they are likely to mislead or otherwise influence the jury.' *Hoffschlaeger Co., Ltd. v. Fraga,* 290 F. 146, 149."

It is apparent that the overwhelming weight of authority in this country has refused to accept the limitation on argument asserted by defendants. The appellate courts of seven jurisdictions have rendered decisions in the first five months of this year; six jurisdictions, Louisiana, Indiana, Iowa, Montana, Court of Appeals D. C. and Maryland, held that the *per diem* argument was proper, and only one, Illinois, held to the contrary. Thus the trend of authority seems to continue against defendants' position and marks it as an illogical, inequitable and the minority rule in this country.

Defendant contends that the *per diem* argument is, in effect, testimony or evidence, and, if not, at least the jury is apt to mistake the argument for evidence. It is obvious that counsel, in arguing the case to a jury, is not testifying but merely expressing his individual views on the evidence presented and attempting to aid the jury under the instructions of the court in using some method to arrive at a verdict and sum based upon an action for unliquidated damages.

In the instant case the jurors were instructed prior to argument by counsel as follows:

"You will now listen to *arguments* of counsel who, in the performance of their duty, will endeavor to aid you in arriving at a just verdict by reviewing and discussing the *evidence and showing the application and effect thereof* under the law as given you in these instructions, and it is your duty to give respectful and careful attention to such *arguments* as may be addressed to you by counsel for both sides; but whatever comment counsel may make during the course of the trial or what they may say in their *arguments,* you will bear in mind that it is your sworn duty as triers of this case to be governed in your deliberations and final conclusions by the *evidence as it has been produced before you* and as you understand and remember it, and the law as given you in these instructions." [Emphasis supplied.]

This court will take judicial knowledge of the fact that the instruction given was a stock instruction which has been used and approved in this state for a great many years. As was stated by President Frank C. Haymond of the West Virginia court in an excellent expression in *Crum v. Ward,* supra, "Surely it cannot be successfully asserted that the average jury is so stupid as to believe that counsel as a partisan advocate, in arguing the cause of his client, is giving testimony or acting in the capacity of a sworn witness. Jurors observe and know how a person becomes a witness and how he presents sworn evidence in the trial of a case. To say that the

statements of counsel are considered as evidence by the jury is a manifest misstatement which distorts the facts."

The Washington supreme court put it this way in *Jones v. Hogan,* supra: "Argument is not evidence, and we cannot attribute to any jury in this state of lack of sufficient mentality to distinguish between the two. This is especially true after the court has instructed that any remark of counsel not sustained by the evidence should be disregarded."

In my opinion Kansas jurors are equally as intelligent as jurors in our sister states.

The contention raised most strongly is that the argument by counsel is not based on the evidence, since no witness is allowed to testify as to the amount of compensation which should be recovered for pain and suffering. This argument seems particularly unconvincing. The jury must observe, weigh, and then finally equate the evidence of pain with a money judgment, but the defendant contends that this same evidence does not contain a basis for counsel to argue a *per diem* worth. Since the verdict must be consistent with the evidence, in other words, inferrable from it, it should follow that counsel's estimate of the value should also be inferrable from the evidence.

In the course of trial testimony is given as to pain and suffering, and this is the foundation for the argument. Of course, no witness can express an opinion as to the amount which should be awarded for pain and suffering; but the absence of testimony of that character has nothing to do with the right of counsel to discuss the evidence of pain and suffering and draw and present to the jury his inferences from such evidence. It is just as certain that no witness can testify that in his opinion a defendant is negligent; all he can do is to testify to the facts within his knowledge. Whether a defendant is guilty of negligence is a question to be determined by the court or the jury as a trier of fact. I cannot, however, believe that even the authorities which condemn the use in the argument of counsel of a mathematical or *per diem* formula for ascertaining damages for pain and suffering would consider improper and disapprove argument of counsel in which he gives expression to his inferences from the evidence that the defendant was guilty of negligence. (*Crum v. Ward,* supra.)

In Kansas counsel have always been allowed and permitted to express their opinions based upon the evidence and inferences

therefrom as to the sum of money to which they feel the plaintiff is entitled in a personal injury action. How can one now argue that the expression of the opinion or conclusion of counsel, when expressed in terms of a *per diem* or other time-segment basis, becomes evidence when the expression as to a lump sum amount is perfectly permissible and has never been nor is it now regarded as evidence?

In determining what is "fair and reasonable compensation," the jury must convert the pain and suffering into dollars. The court gives the jury little or no help in performing this difficult task. Therefore, it would seem that counsel should have wide latitude in argument.

It is asserted that the amount requested in the mathematical formula is purely speculative, and, therefore, should be rejected. Certainly the amount of counsel's estimate of money value for a day's or year's pain is speculative, just as the *ad damnum* clause in his petition is speculative, and as the jury's allowance for pain and suffering or for permanent injury is speculative. In Kansas we allow the plaintiff to state to the jury the amount for which he prays, and the court instructs the jury as to the amount of plaintiff's claim and that its verdict, if for the plaintiff, may not exceed that amount. It would be illogical, therefore, to forbid counsel to explain the components which make up the whole amount claimed.

In *Texas and New Orleans Railroad Company v. Flowers* (Texas), 336 S. W. 2d 907, the Texas court expressed it this way:

"It would seem that suggesting some concrete formula, although it must be admitted to be purely a suggestion, in order to give the jury some basis to arrive at its verdict is preferable to leaving it entirely at sea to fix a damage figure en masse 'by guess and by golly.'"

It is argued that each individual has a different threshold of pain and so the formula approach will not work; but, again, this same argument applies to any method of computing an award for pain and suffering or for any damage to personal injury, and, therefore, an attorney should be able to suggest a figure based upon the evidence and facts of the particular case. The Sixth Federal Circuit Court of Appeals said in *Imperial Oil, Limited v. Drlik*, supra:

"In determining the amount of an award for pain and suffering a juror or judge should necessarily be guided by some reasonable practical considerations. It should not be a blind guess or the pulling of a figure out of the air. At the same time there is no exact or precise measuring stick. Exact compensation is impossible in the abstract but the juror or judge should endeavor to make a reasonable or sane estimate.

.   .   .   .   .   .   .   .   .   .   .   .   .   .

"We are more concerned with the result, reached by a reasonable process of reasoning and consistent with the evidence, than we are with which one of several suitable formulas was actually used by the jury or judge."

A strong argument in allowing counsel to use the mentioned technique is the very absence of any fixed rule or standard for monetary measurements of pain and suffering. Great latitude should therefore be allowed counsel in his argument to comment on the evidence, its nature and effect, and to allow proper inference which reasonably may spring from the evidence. Counsel in this state have always been granted the right to argue from the evidence any conclusion which the jury is free to reach, and a lack of objective preciseness in an area of uncertainty should not prohibit or limit such argument.

The few courts which prohibit the mentioned type of argument permit the use as evidence in argument the mortality tables or life expectancy of the injured party as a basis of computation of various elements of damages. I can see nothing more speculative than the life expectancy of a particular individual; yet the Pennsylvania-New Jersey courts permit the life expectancy of the plaintiff to be introduced in evidence and to be used in connection with ascertaining the total amount of the award of damages, and then, because speculative, refuse to permit the use of the mathematical or *per diem* formula in assisting the jury to arrive at a proper award of damages for pain and suffering except in wrongful death actions. (*Matthews v. Nelson,* 57 N. J. Super. 515, 155 A. 2d 111.)

It is difficult to conceive of any realistic basis upon which it would be contended that an argument about money could appeal to the sympathy of a jury more than the testimony of the witnesses as to the extent and duration of the pain and suffering actually endured or to be endured.

It appears to me that this court, along with the Florida court in *Ratner v. Arrington,* supra, should take judicial notice of the practice which has existed among the bar of this state since its statehood to use the *per diem* argument or other argument from the evidence which might assist the jury in arriving at a just sum of unliquidated damages in any case where such damages are involved.

The question presented here is whether this court will follow the seven states adopting the age-old Pennsylvania rule that does not permit a party or a court to make any reference to the jury

of the amount claimed as unliquidated damages, or whether we should follow the twenty-five jurisdictions throughout our land that permit the parties to argue to the jury the mathematical formula in assisting the jury, under the instructions of the court, to arrive at a just verdict. I see nothing improper in arguing a mathematical calculation on the matter of the amount of damages to be awarded for pain and suffering; otherwise, the jury might be compelled to resort to the "by guess and by golly" method. Nevertheless, some formula would seem to be the most reasonable and accurate approach and more likely to result in a just and proper allowance. With the Texas court in *Hernandez v. Baucum,* supra, I consider it a fair argument and rational approach to treat damages for pain the way it is endured—month by month—year by year.

The concept of totality pronounced by the majority opinion has no counterpart in the world of human affairs. Society recognizes "the day" as a basic unit of humanity. We rise in the morning and go to bed at night, and our institutions function accordingly. No judge's salary is computed or paid in a lifetime lump and there are no lifetime meals, no lifetime drinks, no lifetime haircuts, nor anything else; nor has any living human being ever lived a lifetime of pain in the whole. Pain is lived by the hour and the day and is ticked off by the same clock that sends one to work in the morning and home at night.

Although the jurors will eat their daily meals and live their daily lives, they must now think of pain and suffering as a lifetime lump. Such a coerced concept will have no more meaning than lifetime rent, lifetime shoes, or lifetime meals. This court's logic would now force jurors to value steak by the herd, cars by the fleet, and pain by the life. Forcing jurors to think in a language they never heard of cannot be designed or expected to produce just results.

There is absolutely no justification for a rule which singles out one type of damage in one type of case and says that it alone is not the proper subject of adversary argument. Logic declares that stifling of discussion and analysis will not lead to intelligent verdicts. It is to be doubted whether a proper verdict can be expected to break through an atmosphere of judicially imposed ignorance; and equal justice to all will not be obtained by muzzling the advocates. This rule cannot help but lead us and the trial courts into either totally inconsistent decisions or into the most unjust results.

I adhere to the conclusion reached in our former opinion, *Caylor v. Atchison, T. & S. F. Rly. Co.*, 189 Kan. 210, 368 P. 2d 281.

ROBB and JACKSON, JJ., join in the dissent written by WERTZ, J.